IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SOUTHERN PARTS            )
ENGINEERING COMPANY, LLC, a   )
Delaware limited liability company,   )
                                  )
        Plaintiff,            )
                                  )
    v.                   )
                                  )
AIR COMPRESSOR SERVICES,     )
LLC, a South Carolina limited liability   )
company,                  )
                                  )
     and               )
                                  )
LESLIE NEAL SHADE, IV,         )
                                  )
      Defendants.

## COMPLAINT

Plaintiff Southern Parts & Engineering Company, LLC ("SPECO" or "Plaintiff"), for its complaint against Defendants Air Compressor Services, LLC ("ACS") and Leslie Neal Shade, IV ("Shade" and, collectively with ACS, the "Defendants"), states as follows:

## Parties, Jurisdiction, and Venue

1.    SPECO is, and at all times relevant herein, was a Delaware limited liability company with its principal place of business in Fulton County, Georgia.

SPECO sells and services air compressors across the United States.  SPECO is comprised of five members, none of which is a citizen of South Carolina.

2.     SPECO's managing members have authorized to SPECO to bring this action on SPECO's behalf.

3.     ACS is, upon information and belief, a South Carolina limited liability company with its principal place of business in Greenville, South Carolina.  ACS' registered agent, in South Carolina, is Saxon Business Services, LLC, 935 South Main Street, Suite 203, Greenville, South Carolina, 29601.  Upon information and belief, ACS is comprised of two members—Shade and Millard Williamson ("Williamson")—neither of whom is a citizen of Georgia.

4.     Shade is a citizen of South Carolina.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because: (1) there is complete diversity of citizenship between SPECO and the Defendants; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over ACS pursuant O.C.G.A. § 9-10-91 because ACS (1) has transacted, and continues to transact, business within the State of Georgia; (2) has committed, and continues to commit, tortious acts within the State of Georgia; and (3) has purposefully availed itself of the

2

privileges and benefits of conducting business in the State of Georgia. Accordingly, this Court's exercise of personal jurisdiction over ACS is consistent with the underlying due process principles of the United States Constitution.

7.     This Court has personal jurisdiction over Shade pursuant to O.C.G.A. § 9-10-91 because Shade (1) has transacted, and continues to transact, business within the State of Georgia; (2) has committed, and continues to commit, tortious acts within the State of Georgia; and (3) has purposefully availed himself of the privileges and benefits of conducting business in the State of Georgia. Accordingly, this Court's exercise of personal jurisdiction over Shade is consistent with the underlying due process principles of the United States Constitution.

8.     This Court is the proper venue for this dispute pursuant to 28 U.S.C. § 1391 because a substantial part of the acts comprising the causes of action asserted herein occurred, and continue to occur, in this judicial district.

## Background

9.     Shade and Williamson are both former employees of SPECO.

10.     Shade and Williamson both resigned from SPECO on November 9, 2012.

11.     In the months preceding their resignations from SPECO, both Shade and Williamson utilized SPECO's resources to usurp SPECO business

21507016

opportunities, misappropriate SPECO trade secrets, and improperly gain business advantages in furtherance of a scheme to establish and operate a new business to unfairly compete with SPECO.

12.     At all times relevant herein, Shade and Williamson were engaged in a scheme to form ACS with information, knowledge, and property obtained from SPECO.  Upon information and belief, Shade and Williamson are the only two members of ACS, and have utilized ACS as their alter ego to use information, knowledge, and property obtained from SPECO to establish and operate ACS, thereby gaining an unfair advantage or "head start" in the industry, which essentially eliminated the expenses and time Defendants would have needed to expend to establish and operate a competing business.

13.     At all times relevant herein, Shade and Williamson were the agents or employees of ACS, and vice-versa.  In committing the acts alleged herein, Shade and Williamson were acting within the course and scope of their agency or employment and were acting with the consent, permission, and authorization of ACS, and vice-versa.  All actions of Shade and Williamson alleged herein were ratified and approved by the officers or managing members or agents of ACS, and vice-versa.

**A.     Shade and Williamson's responsibilities at SPECO.**

14.     SPECO hired Shade to assist in developing and establishing a new Internet-based sales division for air compressor lubricants, which SPECO referred to as "The Industrial Lubricant Store" or "ILS."

15.     Shade was employed as Director of E-Commerce at SPECO from August 2011 until November 9, 2012.

16.     Williamson was employed as a sales associate at SPECO from August 2011 until November 8, 2012.

17.     As part of his operational responsibilities, SPECO asked Shade to set up a new website for ILS/SPECO.

18.     As part of his job duties at SPECO, Shade was tasked with scouting locations and facilities in South Carolina, which SPECO planned to use for ILS. Shade visited South Carolina approximately twenty times to scout locations and facilities for ILS.

19.     Shade scouted the South Carolina locations and facilities on company time and SPECO paid Shade for the time he spent scouting these locations and facilities.

21507016

**B.      Shade and Williamson decide to usurp SPECO's corporate opportunities for themselves.**

20.      On November 29, 2012, Shade and Williamson registered ACS with the South Carolina Secretary of State's Office.

21.      Months after Shade and Williamson resigned from SPECO, SPECO discovered that Shade and Williamson were operating an Internet website (www.aircompressorservices.com), which specializes in selling air compressor parts and lubricants.

22.      ACS' website is identical, in both concept and character, to the website SPECO hired Shade to create for SPECO's ILS project.  Furthermore, Defendants are operating ACS from the same locations in South Carolina that SPECO paid Shade to inspect as potential facilities for ILS.

23.      In addition, Defendants are offering competing products on their website for prices that, on average, are $0.04 to $0.05 less than those offered by SPECO on its website.

24.      Defendants' website employs the same business plan and strategy as SPECO's planned ILS website, and targets the same customers.

**C.      SPECO investigates Shade and Williamson's computer activities.**

25.      After learning that Defendants had usurped SPECO's plans for the ILS website, SPECO engaged its own information technology professionals and hired forensic computer experts to review Shade and Williamson's computer activity in the weeks prior to their resignations.

26.      SPECO's information technology professionals and computer forensic experts have confirmed the following details concerning Shade's computer activity in the weeks prior to his resignation from SPECO:

a.      On or about October 7, 2012, Shade used his SPECO computer to research business registration filings with the South Carolina Secretary of State's Offices.

b.      On or about October 8, 2012, Shade used his SPECO computer to research website domain name availability for "Air Compressor Services" at www.godaddy.com.

c.      On or about October 29, 2012, Shade used SPECO resources to contact CGR Creative (a Charlotte, North Carolina-based website design and marketing firm) for marketing advice concerning ACS.

d.      On or about November 6, 2012, Shade received a marketing and advertising services proposal CGR Creative had designed for ACS to

7

help Shade and Williamson "launch, market and sustain [their] new company in this competitive market."

e.    During his last days at SPECO, Shade used SPECO resources to access SPECO's customer information, pricing strategies, financials, SalesForce database, and business plans.

f.    On or about November 19, 2012 (ten days after resigning from SPECO), Shade remotely accessed SPECO's SalesForce database access without authorization.  SPECO's SalesForce database contains highly confidential information related to SPECO's customers, pricing strategies, contracts, and business plans.

g.    SPECO's forensic computer expert has confirmed that Shade connected and utilized several USB storage drives to misappropriate SPECO's confidential information and trade secrets from his SPECO computer and SPECO's private computer network.

h.    Shade created an alias login (Matt Williamson) in late 2012, which he used to surreptitiously access SPECO's private computer network long after he left SPECO.

i.    Shade continued to access SPECO's private network after his termination up to and including March 15, 2013.  Specifically, Shade

utilized his access to receive and read emails and customer orders directed to SPECO for many months after he resigned from SPECO.

j.   From December 20, 2011 until he resigned, Shade utilized a computer "wiping" program called CCleaner on his SPECO computer in an attempt to conceal his actions from SPECO.

27.   SPECO's information technology professionals and computer forensic experts have confirmed the following details concerning Williamson's computer activity in the weeks prior to his resignation from SPECO:

a.   On or about October 29, 2012 (ten days before Williamson resigned from SPECO), Williamson used SPECO resources to contact several business services companies and vendors regarding Shade and Williamson's plans for ACS and website designs.

b.   On or about November 6 and 7, 2012 (two and three days before Williamson resigned from SPECO), Williamson corresponded regarding a marketing and advertising services proposal designed for ACS to help Shade and Williamson "launch, market and sustain [their] new company in this competitive market."

c.   On November 8, 2012 (one day before Williamson resigned from SPECO), Williamson connected a USB drive to his SPECO computer

9

and copied a variety of documents, which he took with him when he left SPECO.

d.   On or about November 9, 2012 (the day Williamson resigned from SPECO), Williamson remotely accessed SPECO's SalesForce database access without authorization.  SPECO's SalesForce database contains highly confidential information related to SPECO's customers, pricing strategies, and business plans.

e.   Williamson continued to access SPECO's private network after his termination up to and including January 16, 2013.  Specifically, Williamson utilized his access to receive and read emails and customer orders directed to SPECO.

28.   In the months preceding their resignations from SPECO, both Shade and Williamson were utilizing SPECO resources to usurp SPECO business opportunities, misappropriate SPECO trade secrets, and improperly gain business advantages in furtherance of a scheme to establish and operate a new business to compete with SPECO.

21507016

**First Cause of Action**
**Misappropriation of Trade Secrets**
**(Violation of O.C.G.A. §§ 10-1-760 *et seq.*)**
**Against ACS and Shade**

29.     SPECO incorporates and realleges all other Paragraphs of this Complaint as though fully set forth herein.

30.     At all times relevant herein, SPECO possessed trade secrets essential to its business practices, manufacturing processes, and sales strategies.  This information has economic value in that it enables SPECO to offer and provide its customers air compressor parts sales and services that set it apart from its competitors.  Such proprietary information is not generally known to the public or other air compressor parts sales and services companies, and derives independent economic value from not being known to the general public or to the relevant industry.

31.     SPECO has expended hundreds of thousands of dollars and a significant amount of time and other resources in developing its proprietary information.  In addition, SPECO protects its trade secrets in multiple ways, including but not limited to, requiring passwords for computer access, reminding its employees of the need to protect SPECO's proprietary information, limiting access to certain network drives that contain particularly sensitive information,

maintaining firewalls, private networks, and other technical mechanisms to ensure the security of SPECO's confidential information.

32.   While employed at SPECO, SPECO shared its confidential proprietary information with Shade and Williamson on the specific understanding that Shade and Williamson would maintain the confidentiality of this information and use it only in the manner authorized by SPECO.

33.   Shade and ACS (with the assistance of Williamson) have misappropriated SPECO's trade secrets by acquiring confidential business information, customer lists, pricing, key vendor information, financials, inventory, and strategic business plans belonging to SPECO.

34.   Shade and ACS (with the assistance of Williamson) misappropriated SPECO's trade secrets willfully and maliciously, with full knowledge of the illegality of their actions, and with every intent to utilize SPECO's trade secrets for their own benefit.   In addition, and to conceal Defendants' actions, Shade used computer wiping software to destroy evidence of Defendants' misappropriation.

35.   As a direct result of Defendants' misappropriation of SPECO's trade secrets, SPECO has suffered, and will continue to suffer, economic losses.   In addition, Defendants gained an unfair advantage, or "head start," in the industry by misappropriating SPECO's trade secrets, which essentially eliminated the expenses

21507016

and time Defendants would have needed to expend to establish and operate a competing business.

36.     Pursuant to O.C.G.A. § 10-1-763(a), SPECO is entitled to recover both the (1) actual economic losses SPECO suffered as a result of Defendants' misappropriations; and (2) the amount of unjust enrichment caused by Defendants' misappropriations that is not taken into account in computing SPECO's actual losses.

37.     Because Defendants' misappropriations were malicious, SPECO is also entitled to recover exemplary damages (pursuant to O.C.G.A. § 10-1-763(b)) in an amount not exceeding twice any award made pursuant to O.C.G.A. § 10-1-763(a).

38.     In addition, pursuant to O.C.G.A. § 10-1-764, SPECO is entitled to recover the reasonable attorneys' fees it expends pursuing this matter because Defendants' misappropriations were willful and malicious.

39.     SPECO is entitled to recover damages for Defendants' misappropriation of trade secrets in an amount to be determined at trial but, in any case, in excess of $75,000.

**Second Cause of Action**
**Unfair Business Practices**
**(Violation of O.C.G.A. §§ 10-1-390 *et seq.*)**
**Against ACS and Shade**

40.    SPECO incorporates and realleges all other Paragraphs of this Complaint as though fully set forth herein.

41.    Defendants use of SPECO's funds and resources to scout locations in South Carolina, design a website, and build a competing business while employed at SPECO constitutes unlawful, unfair, and fraudulent business acts and practices, in violation of Georgia's Fair Business Practices Act of 1975, O.C.G.A. §§ 10-1-390 *et seq.* ("FBPA").

42.    As a direct result of Defendants' acts of unfair competition under the FBPA, SPECO has suffered, and will continue to suffer, economic harm.   In addition, Defendants gained an unfair advantage, or "head start," in the industry by utilizing SPECO's funds and resources to establish and operate ACS, which essentially eliminated the expenses and time Defendants would have needed to expend to establish and operate a competing business.

43.    On March 22, 2013, pursuant to O.C.G.A. § 10-1-399(b), SPECO sent Shade a written demand for relief requesting that Shade cease engaging in any unfair business practices.  SPECO warned Shade it would vigorously defend itself against any further violations.

44.     Defendants should be required to restore to SPECO any and all of SPECO's materials misappropriated from SPECO, including all assets described herein, and reimburse SPECO for all funds and resources Defendants utilized in furtherance of their scheme to establish and operate a competing business while employed by SPECO.

45.     Pursuant to O.C.G.A. §§ 10-1-399(a), SPECO seeks actual damages sufficient to compensate SPECO for the funds and resources Defendants utilized in furtherance of their scheme to establish and operate a competing business while employed by SPECO.

46.     Because Defendants' violations of the FBPA were intentional, SPECO is also entitled to recover exemplary damages (pursuant to O.C.G.A. § 10-1-399(c)) in an amount not exceeding three times any award made pursuant to O.C.G.A. § 10-1-399(a).

47.     Pursuant to O.C.G.A. §§ 10-1-399(a), SPECO also injunctive relief mandating that Defendants: (1) cease and desist utilizing any information, knowledge, and property Defendants are using, or could use, to operate ACS and compete with SPECO which was obtained while Defendants were utilizing SPECO's funds and resources;  (2) return of all information, knowledge, and property Defendants are using, or could use, to operate ACS and compete with

SPECO which was obtained while Defendants were utilizing SPECO's funds and resources; and (3) cease and desist operating their website (www.aircompressorservices.com), which directly competes with SPECO's website (www.compressorparts.com), and which is the product of information, knowledge, and property Defendants obtained, and/or designed, while utilizing SPECO's funds and resources.

48.     In addition, pursuant to O.C.G.A. § 10-1-399(d), SPECO is entitled to recover the reasonable attorneys' fees it expends pursuing this matter.

49.     SPECO is entitled to recover damages for Defendants' violation of the FBPA in an amount to be determined at trial but, in any case, in excess of $75,000.

### Third Cause of Action
**Intentional Interference with Contractual Relations**
**Against ACS and Shade**

50.     SPECO incorporates and realleges all other Paragraphs of this Complaint as though fully set forth herein.

51.     After utilizing SPECO's funds and resources to scout locations in South Carolina, design a website, and build a competing business on company time, Defendants induced and/or have attempted to induce SPECO's customers not to enter into, or continue, contractual relationships with SPECO.

21507016

52.     In undertaking their activities, Defendants have acted purposefully and maliciously, with intent to injure SPECO.

53.     Defendants' actions have caused SPECO economic harm.  In addition, Defendants gained an unfair advantage, or "head start," in the industry by utilizing SPECO's funds and resources to establish and operate ACS, which essentially eliminated the expenses and time Defendants would have needed to expend to establish and operate a competing business.

54.     SPECO is entitled to recover damages for Defendants' intentional interference with SPECO's contractual relationships in an amount to be determined at trial but, in any case, in excess of $75,000.

55.     In addition, because Defendants committed the actions described herein purposefully and maliciously, with intent to injure SPECO, SPECO is entitled to recover punitive damages.

### Fourth Cause of Action
### Intentional Interference with Business Relations
### Against ACS and Shade

56.     SPECO incorporates and realleges all other Paragraphs of this Complaint as though fully set forth herein.

57.     After utilizing SPECO's funds and resources to scout locations in South Carolina, design a website, and build a competing business on company

time, Defendants induced and/or have attempted to induce SPECO's customers not to enter into, or continue, business relationships with SPECO.

58.     In undertaking their activities, Defendants have acted purposefully and maliciously, with intent to injure SPECO.

59.     Defendants' actions have caused SPECO economic harm.  In addition, Defendants gained an unfair advantage, or "head start," in the industry by utilizing SPECO's funds and resources to establish and operate ACS, which essentially eliminated the expenses and time Defendants would have needed to expend to establish and operate a competing business.

60.     SPECO is entitled to recover damages for Defendants' intentional interference with SPECO's business relationships in an amount to be determined at trial but, in any case, in excess of $75,000.

61.     In addition, SPECO is entitled to recover punitive damages against Defendants because they committed the actions described herein purposefully and maliciously, with intent to injure SPECO.

**Fifth Cause of Action**
**Computer Fraud and Abuse Act**
**(Violation of 28 U.S.C. §§ 1030 *et seq.*)**
**Against ACS and Shade**

62.     SPECO incorporates and realleges all other Paragraphs of this Complaint as though fully set forth herein.

63.     Shade's use of the computer wiping program, CCleaner, on his SPECO computer damaged his SPECO computer and the information on his SPECO computer.

64.     SPECO did not authorize Shade to use the CCleaner program.

65.     In the days immediately preceding their resignations from SPECO, Shade and ACS (with the assistance of Williamson) accessed protected SPECO computers and computer network drives, to which they did not have authorization, to misappropriate SPECO's trade secrets.

66.     After the date of their resignations from SPECO, both Shade and ACS (with the assistance of Williamson) continued to access SPECO's private computer network and SalesForce database to misappropriate SPECO's trade secrets.

67.     As a result of Defendants' actions, SPECO has suffered actual damages and losses to its business and goodwill.  It has also been forced to expend additional resources diagnosing the extent of Defendants' unauthorized access, repairing damages to its computer systems, and modifying its computer systems to prevent further misappropriations of its trade secrets.  At minimum, SPECO has sustained actual damages and losses in excess of $5,000.

68.    SPECO is entitled recover damages for Defendants' violation of the Computer Fraud and Abuse Act in an amount to be determined at trial but, in any case, in excess of $5,000.

### Prayer for Relief

WHEREFORE, Plaintiff Southern Parts & Engineering Company, LLC demands judgment against Defendants Air Compressor Services, LLC and Leslie Neal Shade, IV:

A.    awarding SPECO actual damages against all Defendants in amounts to be determined at trial but, in any case, in excess of $75,000;

B.    awarding SPECO punitive damages against all Defendants;

C.    awarding SPECO exemplary damages against all Defendants;

D.    awarding SPECO its reasonable attorneys' fees expended pursuing this matter;

E.    for injunctive relief mandating that Defendants: (1) cease and desist utilizing any information, knowledge, and property Defendants are using, or could use, to operate ACS and compete with SPECO which was obtained while Defendants were utilizing SPECO's funds and resources;  (2) return of all information, knowledge, and property Defendants are using, or could use, to operate ACS and compete with SPECO which was obtained while Defendants

were utilizing SPECO's funds and resources; and (3) cease and desist operating

their website (www.aircompessorservices.com), which directly competes with

SPECO's website (www.compressorparts.com), and which is the product of

information, knowledge, and property Defendants obtained, and/or designed, while

utilizing SPECO's funds and resources; and

     F.     for such other and further relief as the Court deems just and proper.

## **<u>Jury Demand</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

21507016

Dated: July 3, 2013        Respectfully submitted,


By:  /s/ Eric J. Andalman
    Eric J. Andalman, #GA134021
    DENTONS US LLP
    233 South Wacker Drive, Suite 7800
    Chicago, Illinois  60606-6306
    Atlanta Address:
    3350 Riverwood Parkway, Suite 1900
    Atlanta, Georgia  30339-3372
    (312) 876-8000
    FAX (312) 876-7934
    eric.andalman@dentons.com

    Andrea M. Kimball (*Pro Hac Vice* Pending)
    DENTONS US LLP
    4520 Main Street, Suite 1100
    Kansas City, Missouri 64111
    (816) 460-2400
    FAX (816) 531-7545
    andrea.kimball@dentons.com

    *Attorneys for Plaintiff Southern*
    *Parts & Engineering, LLC*

21507016